**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSSELL OSWALD, JR., : | |
| : | |
| Plaintiff, : | Civil Action No. 05-1109 (FLW) |
| : | |
| v. : | |
| : | **OPINION** |
| JO ANN B. BARNHART, COMMISSIONER OF : | |
| SOCIAL SECURITY, : | |
| : | |
| Defendant : | |

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Plaintiff Russell Oswald, Jr. appeals from the final decision of the Commissioner of Social Security, Jo Ann B. Barnhart ("Commissioner"), denying his claim for Title II Disability Insurance Benefits ("disability benefits" or "benefits") under the Social Security Act. Plaintiff asserts that the record, when considered in full, substantiates his claim and requires a conclusion that he was disabled and entitled to benefits on or before December 31, 2000. Specifically, Plaintiff argues that Administrative Law Judge Joseph M. Hillegas ("the ALJ"), erred by: (i) finding that Plaintiff did not suffer from a "severe impairment," prior to December 31, 2000, the date Plaintiff was last insured for disability benefits, and (ii) failing to seek assistance from a medical advisor to determine the onset date of Plaintiff's disability as required by Social Security Ruling 83-20. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the decision of the ALJ is affirmed, and Plaintiff's Complaint is dismissed.

# I.      BACKGROUND

Plaintiff was born on July 5, 1944, and was sixty years old on December 10, 2004, the date the ALJ rendered the unfavorable decision that is the subject of this appeal. AR. 9-16, 42.[1]  Plaintiff is a high school graduate, and speaks and reads English. AR 50, 57, 144.  His past relevant work includes service in an auto parts warehouse and in a supermarket bakery, jobs he described as having required light physical activity and exertion. AR 52, 66-70, 144, 147, 150-151.  More recently, from at least December 2000 through January 2001, Plaintiff worked the night shift in a hotel. AR 14, 932, 97.  Plaintiff alleges disability due to congestive heart failure, chronic obstructive pulmonary disease, hypertension, low back pain, and cellulitis. AR 51.  In February 2003, Plaintiff suffered a myocardial infarction which resulted in a persistent pulmonary condition and disability. AR 102-05.  However, for the reasons set forth above, Plaintiff argues that he is entitled to disability benefits prior to December 31, 2000.

## A.      Procedural History

On April 22, 2003, Plaintiff filed an application for Title II disability benefits and Title XVI Supplemental Security Income ("SSI") payments. AR. 12.  Plaintiff's application for SSI payments was approved, and he began receiving such payments in April 2003. Id.  However, Plaintiff's application for disability benefits was denied initially, and upon reconsideration, because Plaintiff was unable to establish that he was disabled prior to December 31, 2000, the date he was last insured for disability benefits. Id. Plaintiff challenged the denial of his application for disability benefits, and on November 1, 2004, the ALJ conducted an administrative hearing. Id.  At that hearing, Plaintiff, through his attorney, Alan H. Polonsky, amended his alleged onset date of disability from January 1, 1996, to September 7, 2000, the date

---

[1] "AR." refers to the Administrative Record filed by the Commissioner in conjunction with her Answer to Plaintiff's Complaint.

corresponding to his first attempt to seek treatment at the Veterans Administration ("VA") Hospital. AR 140. Although the ALJ did not acknowledge this amendment expressly in his written decision, it is clear from his decision that he examined the record for evidence of disability at any time prior to December 31, 2000. See AR 14-16. In his December 10, 2004 decision, the ALJ concluded that Plaintiff was not disabled prior to December 31, 2000, and denied his claim for disability benefits. AR 16. On January 3, 2005, Plaintiff petitioned the Appeals Council for review of the ALJ's decision. AR 8. The Appeals Council denied Plaintiff's appeal on January 28, 2005, rendering the ALJ's decision the final decision of the Commissioner. AR 4. This appeal followed.

**B.    Plaintiff's Testimony**

At the administrative hearing before the ALJ, Plaintiff testified that his legs and back began to hurt in the late 1990's, and that he also began experiencing shortness of breath at that time. AR. 155. Plaintiff stated that he did not see doctors "very often," and that he received no medical treatment from 1995 to 1999. AR. 149, 158. He also stated that he went to the VA Hospital for only a few months beginning in September 2000, AR. 146, 159, and that he would go only when he was "really sick," like when he had the flu or when his legs would swell. AR. 146-147, 149-150. Plaintiff testified that he was treated with medication, including water pills, Tylenol and Tylenol III, which he tolerated well. AR. 149. Plaintiff also stated that he was prescribed Oxycontin, which he testified made him dizzy. AR. 156. Plaintiff reported that back surgery was never recommended as possible treatment for his back pain. AR. 155. He testified that he never went to the hospital or the emergency room until 2003 AR. 143, 55-156.

Plaintiff also testified that he was unsure when he last worked, and stated that he believed it was in 1995, 1996 or 1997. AR 145. He claimed that he stopped working in the supermarket bakery after its owner sold the store and Plaintiff was laid off. AR. 144-145. Plaintiff testified that he had difficulty being

3

on his feet all day at the bakery and that he had trouble standing for more than two or three hours at a time. AR. 145, 148.  After he was laid off, Plaintiff stated that he did odd jobs, like cleaning bathrooms. Tr. 141, 147, 150.  However, Plaintiff testified that he could not work a full day due to certain functional limitations. AR. 147.  Specifically, he stated that he could stand for only up to ten minutes at a time, and that he could walk only one half block before becoming short of breath. AR 154-155.  He testified that he could sit "all day," but that his legs would swell. AR. 156-157.  Plaintiff also reported difficulty climbing stairs due to shortness of breath, and stated that he could lift and carry up to twenty or thirty pounds. AR 157.

Plaintiff testified that he was living with his sister and her husband at the time of the administrative hearing. AR. 147.  He stated that he was able to do his own laundry, and take care of his room and personal needs. AR. 78, 154.  He also testified that he was able to cook, AR. 148, 154, and that he socialized with his brothers and friends, and at the Veteran's of Foreign Wars club. AR. 155.

C.      **Medical Evidence**

1.      **Dr. Frank Wilczynski**

Dr. Frank Wilczynski treated Plaintiff in 1995, and from 1999 through at least July 2003. AR. 106-123.  Dr. Wilczynski's earliest examination of Plaintiff was on April 26, 1995. AR. 123.  During that visit, Plaintiff complained of lethargy and gastroenteritis. Id.  In his exam notes, Dr. Wilczynski reported that Plaintiff's extremities were normal. Id.  Plaintiff's heart showed a regular rate and rhythm without murmurs, and his lungs were clear to auscultation and percussion. Id.  A neurological exam confirmed normal sensation and motor abilities. Id.  Plaintiff's blood pressure was 180/106, and he weighed 263 pounds. Id.  On June 7, 1995, Dr. Wilczynski treated Plaintiff again. Id.  According to Dr. Wilczynski's notes, Plaintiff's blood pressure was 160/106. Id.  Plaintiff's heart was normal, but Dr. Wilczynski found

rhonchi in his lungs. Id.  Dr. Wilczynski assessed hypertension and mild chronic obstructive pulmonary disease. Id.  On June 13, 1995, Plaintiff called Dr. Wilczynski's office and reported that he believed his blood pressure had increased. Id.  Plaintiff presented that same day for evaluation, but left after fifteen minutes, without being examined. Id.  On November 10, 1995, Plaintiff returned for a follow-up. AR. 122. At that time, Dr. Wilczynski's noted that Plaintiff's blood pressure was 148/96, and he weighed 276 pounds. Id.  Dr. Wilczynski examined Plaintiff's heart, lungs and extremities and described each as normal. Id.

The record does not include evidence that Plaintiff sought any medical treatment from  November 10, 1995 through February 1999.  On March 9, 1999, Dr. Wilczynski treated Plaintiff again. AR. 121. According to Dr. Wilczynski's notes, Plaintiff's blood pressure was 160/92 and his weight was 259 pounds. Id.  Plaintiff's heart was normal and his lungs were clear. Id.  Dr. Wilczynski noted the presence of lumbosacral spasms and noted the possibility of osteoarthritis. Id.  He advised Plaintiff to walk for exercise and also recommended stretching. Id.

During the fall of 1999, Plaintiff saw Dr. Wilczynski regularly.  On August 11, 1999, Plaintiff presented to Dr. Wilczynski complaining of difficulty breathing. Id.  Dr. Wilczynski noted that pneumonia should be ruled out, and recorded Plaintiff's blood pressure as 160/102, and his weight at 253 pounds. Id.  Plaintiff's heart was normal, but Dr. Wilczynski detected  rhonchi in Plaintiff's lungs. Id.  Dr. Wilczynski assessed arthritis and degenerative joint disease in Plaintiff's extremities, but his notes do not contain any clinical findings in support. Id.  During a follow-up examination on August 18, 1999, Plaintiff reported feeling better. Id.  Dr. Wiczynski recorded Plaintiff's blood pressure as 168/100, and his weight at 257 pounds. Id.  Dr. Wilczynski diagnosed hypertension, and degenerative joint disease of Plaintiff's lumbar spine, but recorded no clinical findings in support. Id.  He prescribed Celebrex to Plaintiff for pain relief.

5

Id.  On September 9, 1999, Dr. Wilczynski recorded Plaintiff's blood pressure as 160/92. AR. 121. Plaintiff's weight was 259 pounds and his heart and lungs were normal. Id.  Dr. Wilczynski diagnosed arthritis and degenerative joint disease, and advised Plaintiff to walk for exercise. Id.  On October 8, 1999, Plaintiff again presented to Dr. Wilczynski. AR. 121.  Plaintiff's blood pressure was 150/88. AR. 121. Plaintiff's heart and lungs were normal. Id.  At a November 10, 1999 follow-up, Dr. Wilczynski recorded Plaintiff's blood pressure as 150/92. Id.  Plaintiff's heart was normal, but Dr. Wilczynski noted rhonchi in Plaintiff's lungs. Id.  Dr. Wilczynski did not record any additional  clinical findings. Id.

Plaintiff next sought treatment from Dr. Wilczynski on January 5, 2000, at which time he complained of back pain and reported taking Tylenol III for pain relief. AR. 120.  Dr. Wilczynski recorded Plaintiff's blood pressure as 170/96, and noted rhonchi and wheezes in Plaintiff's lungs. Id.  Dr. Wilczynski recorded no additional clinical findings.  However, he assessed hypertension and lumbosacral strain/degenerative joint disease. Id.  At a February 3, 2000 follow-up, Plaintiff reported lumbosacral aches and pain. Id.  Dr. Wilczynski recorded Plaintiff's blood pressure as 150/84. Id.  Other clinical findings included a normal heart, and wheezes in Plaintiff's lungs. Id.  Dr. Wilczynski again assessed hypertension and degenerative joint disease. Id.  He also assessed chronic obstructive pulmonary disease. Id.  On March 6, 2000, Plaintiff returned to Dr. Wilczynski for treatment of a cough and chest congestion. AR. 119. Plaintiff complained of wheezing, but an examination showed clear lungs. Id.  Plaintiff's blood pressure was 140/98. Id.  Dr. Wilczynski noted that Plaintiff refused to be weighed. Id.  A few days later, Plaintiff returned to Dr. Wilczynski's office for a follow-up. Id.  Plaintiff's blood pressure was 140/98. Id.  Dr. Wilczynski noted that Plaintiff's heart had a regular rate and rhythm, and that Plaintiff's lungs were clear. Id.  Dr. Wilczynski also diagnosed arthritic degenerative joint disease. Id.

On May 15, 2000, Plaintiff again sought treatment from Dr. Wiczynski. AR. 118.  According to

Dr. Wilczynski's notes, Plaintiff's blood pressure was 154/86, and his heart had a regular rate and rhythm. Id.  There were rhonchi in Plaintiff's lungs, but Dr. Wiczynski reported no other clinical findings. Id. Plaintiff reported that he was trying to quit smoking cigarettes. Id.  At Plaintiff's June 27, 2000 visit to Dr. Wiczynski's office, his lungs were clear, and his blood pressure was 154/86. Id.  Plaintiff reported continued back pain, but Dr. Wiczynski's notes contain no clinical findings related to Plaintiff's back. Id. Plaintiff told Dr. Wiczynski that he could not walk nine holes of a golf course due to his back pain. Id.  At the time, Plaintiff continued to  take Tylenol III for pain relief. Id.  He refilled a prescription for Tylenol III in September and October 2000, without examination. AR. 117.

In a December 19, 2000 follow-up, Plaintiff again reported continued back pain. AR. 117. However, Dr. Wilczynski did not examine Plaintiff's back. AR 117.  Plaintiff's lung were clear, his heart was normal, and his blood pressure was 130/84. Id.  Dr. Wiczynski examined Plaintiff's extremities and noted bilateral edema in his legs. Id.  Dr. Wilczynski also noted degenerative joint disease in Plaintiff's knees, but included no clinical findings in his report. Id.  Also, Dr. Wiczynski diagnosed coronary artery disease for the first time. Id.  Plaintiff returned for a follow-up appointment on January 24, 2001. AR. 116. During that examination, his blood pressure was 128/80, his heart was normal, and there were rhonchi in his lungs. Id.  Dr. Wiczynski noted degenerative joint disease in Plaintiff's knees, and indicated that Plaintiff was given compression stockings for his leg edema. Id.

Plaintiff next saw Dr. Wilczynski on May 1, 2001. AR. 116.  In his notes from that examination, Dr. Wiczynski recorded Plaintiff's blood pressure as 150/98. Id.  He described Plaintiff's heart as normal, but noted that Plaintiff's hypertension was "uncontrolled." Id.  Dr. Wiczynski also noted Plaintiff's complaint of lower back pain, but did not examine Plaintiff's back. Id.  At a follow up examination on May 25, 2001, Plaintiff's blood pressure was 138/86 and his lungs contained rhonchi. AR. 115.  In his

examination notes, Dr. Wiczynski also recorded Plaintiff's complaints of sciatica. AR. 115.  On June 15, 2001, Plaintiff underwent a magnetic resonance image ("MRI") study of his lumbar spine. AR. 114.  The study showed generalized "mild" developmental spinal stenosis, but was otherwise unremarkable. Id.

Plaintiff returned to Dr. Wilczynski's office on July 23, 2001. AR 113.  He stated that he had been exercising and dieting, but also complained of lower back pain and some swelling in his legs. Id.  Dr. Wiczynski recorded Plaintiff's blood pressure as 148/90, and found rhonchi in Plaintiff's lungs. Id.  Dr. Wiczynski reported no other clinical findings but diagnosed spinal stenosis and osteoarthritis. Id.  On August 20, 2001, Plaintiff saw Dr. Wiczynski again. Id.  Plaintiff complained of lower back pain and his blood pressure was 180/96. Id.  Dr. Wilczynsk again diagnosed spinal stenosis and osteoarthritis, as well as degenerative joint disease. Id.  On October 23, 2001, Plaintiff visited Dr. Wiczynski with complaints about his blood pressure. AR.112.  According to Dr. Wiczynski's examination notes, Plaintiff's blood pressure was 116/96, and he had rhonchi in his lungs. Id.  Despite finding Plaintiff's heart rate and rhythm regular, Dr. Wiczynski described his hypertension as "uncontrolled." Id.

A December 21, 2001 examination revealed that Plaintiff's heart was normal, his lungs were clear, and his blood pressure was 150/86. Id.  Plaintiff refused to allow Dr. Wiczynski to weigh him. Id.  Dr. Wiczynski also noted Plaintiff's complaints of low back pain and that he had visited the VA Hospital. Id.  Dr. Wiczynski also noted venous insufficiency for the first time. Id.  In a March 15, 2002 follow-up visit, Plaintiff complained to Dr. Wilczynski of low back pain, "severe" pain in his knees, and leg cramps. AR. 111.  Dr. Wiczynski did not note any clinical findings related to Plaintiff's back or legs, and instead diagnosed hypertension, spinal stenosis, chronic obstructive pulmonary disease, degenerative joint disease, and arthritis. Id.  According to Dr. Wiczynski's examination notes, Plaintiff's heart rate and rhythm were normal, his blood pressure was 140/84, and Plaintiff's lungs contained rhonchi and wheezes. Id.

8

On June 11, 2002, Plaintiff presented to Dr. Wilczynski complaining of "chronic pain." Id. Plaintiff's heart rate and rhythm were regular, his lungs were clear, and his blood pressure was 180/98. Id. Dr. Wiczynski noted edema in Plaintiff's extremities. Id. Approximately one month later, on July 19, 2002, Dr. Wilczynski examined Plaintiff again. AR. 110. Dr. Wilczynski recorded  Plaintiff's blood pressure as 166/96, noted edema in Plaintiff's legs, and noted rhonchi and wheezes in Plaintiff's lungs. Id. During Plaintiff's September 17, 2002 visit to refill certain drug prescriptions, Dr. Wilczynski examined Plaintiff's lungs and heart. Id. Plaintiff's blood pressure was 160/88. Id. Plaintiff returned to Dr. Wilczynski's office on November 11, 2002 to refill his prescription again. AR. 109. Dr. Wilczynski examined Plaintiff again on December 13, 2002. Id. Plaintiff complained of low back pain. Id. His blood pressure was 160/88, his heart rate and rhythm were normal, and his lungs were clear. Id.

Dr. Wilczynski's March 6, 2003 clinical notes indicate that Plaintiff was hospitalized for five days for congestive heart failure, chronic obstructive pulmonary disease, and cellulitis. AR 108. Dr. Wilczynski's examination of Plaintiff revealed a blood pressure of 126/82. Id. On May13, 2003, Dr. Wilczynski examined Plaintiff again and found rhonchi in his lungs but no edema in his extremities.  AR. 107. Plaintiff's blood pressure was 160/84. Id. Dr. Wilczynski's examination notes from July 2, 2003 recorded Plaintiff's blood pressure at 148/84, wheezes and rhonchi in his lungs. Id.

### 2.    Veterans Administration Medical Records

During the period preceding his eventual hospitalization, Plaintiff also received medical treatment from the VA Hospital. AR. 86-101.  On September 7, 2000, Plaintiff presented to the emergency room complaining of back pain. AR. 100-101.  He also reported a history of hypertension. Id.  Plaintiff stated that his hypertension had been treated "in the past" with various medications, and that he took Tylenol III for relief of back pain, and occasionally Percocet for more intense back pain. Id.  Plaintiff also described

9

lower extremity edema with venous insufficiency. Id. He denied any history of coronary artery disease, myocardial infarction, diabetes, or renal or pulmonary disease. Id. Examination showed a blood pressure of 165/94, and bilateral, +2 pitting edema to just below Plaintiff's knees. Id.  A cardiac examination revealed a regular heart rate and rhythm, without audible murmurs. Id.   The remaining physical examination was unremarkable. Id.  The emergency room physician assessed hypertension, chronic low back pain, and venous insufficiency, and advised Plaintiff to follow-up in two weeks to check his blood pressure control. Id.  The physician prescribed Fosinopril and Lasix for high blood pressure, and Oxycontin for mild to moderate pain. Id.

      Plaintiff returned to the VA Hospital emergency room on September 22, 2000. AR. 99-100. His blood pressure was 149/78. AR. 100.  His extremities were non-tender without edema. Id.  Notes from the remaining physical examination were unremarkable. Id.  The examining physician assessed hypertension with "good control," and chronic low back pain. Id.  Laboratory results revealed a glucose level of 110 (normal is 74-118). AR. 86.  Plaintiff's cholesterol value was recorded at 221 (normal is 0-199), his triglyceride value was 321 (normal is 0-199), which placed him at borderline risk for coronary heart disease. AR. 86-87.

      Plaintiff returned to the emergency room for follow-up treatment on October 4, 2000. AR. 99. Plaintiff again reported low back pain, but noted relief with Oxycontin. Id.  At Plaintiff's request, his treating physician ordered Plaintiff's medication refilled. Id.  On December 15, 2000, Plaintiff presented for an initial visit to the Primary Care Center at the VA Hospital. AR. 96-99.  He reported a thirty-year history of smoking, AR. 97, and denied experiencing chest pain, dyspnea on exertion, and motor and sensory deficits. AR. 98.  He described back pain while walking. Id.  Plaintiff's blood pressure was 129/85, and he weighed 282 pounds. Id.  His heart and lungs were unremarkable. Id. Plaintiff's treating physician

noted a bilateral, 2+ pitting edema to Plaintiff's knees without cyanosis or clubbing. Id.  Plaintiff's pedal pulses were intact. Id.  His lumbar spine was tender. Id.  His treating physician diagnosed hypertension, obesity, and chronic lower back pain. AR. 98.  He recommended that Plaintiff lose weight and exercise to relieve his back pain and ameliorate cardiac risk. Id. The physician also prescribed Oxycontin to relieve Plaintiff's back pain. Id.  Plaintiff also was given compression stockings to relieve his edema. Id.  During his examination, Plaintiff stated that he had been working the night shift at a motel. Id.

During his next examination at the VA Hospital, on January 19, 2001, Plaintiff reported that he continued to work the night shift at a motel. AR. 92-94.  The record also noted that since his initial visit, Plaintiff had lost fourteen pounds. AR. 93.  Plaintiff reported walking two to three times per week for exercise, and that he had reduced his smoking from two packs per day to one. Id.  Plaintiff described back pain, but denied chest pain, dyspnea on exertion or other gastrointestinal symptoms. Id.  He also reported that his lower extremity edema had improved with use of compression stockings. Id.  Examination revealed a blood pressure of 148/102 and a weight of 215 pounds.[2] Id.  Plaintiff's lungs contained rhonchi but no fremitus or egophony. AR. 94.  His heart was without rubs, gallops or murmurs. Id.  The neurological exam revealed bilateral quadriceps and mild hip flexor weakness of 4/5 (normal is 5/5), but was otherwise normal. Id. Plaintiff's treating physician concluded that Plaintiff had made good progress in terms of weight loss, exercise and smoking cessation. Id.  He advised that plaintiff reduce his alcohol intake, which was two to three drinks per day, to improve his hypertension. Id.

Plaintiff returned to the VA Hospital on November 7, 2001, and  reported chronic lower back pain, hypertension, and bilateral lower extremity edema. AR. 89.  He denied "all other symptoms," including

_____

[2] This weight measurement is likely erroneous.  The progress note for this visit indicates that Plaintiff lost fourteen pounds since his last visit on December 15, 2000.  On that date, the record indicates that Plaintiff weighed 282 pounds. AR. 98.

bowel/bladder incontinence, sciatica, chest pain and dyspnea. AR. 90.  He indicated that he had been without medication for several months due to administrative difficulties at the VA Hospital. Id.  Plaintiff reported that he was still working the night shift at a motel. AR. 89.  According to examination notes made by Plaintiff's treating physician, Plaintiff's blood pressure was 158/89, and his weight was 282 pounds. AR. 90.  Plaintiff's lungs were clear to auscultation. Id.  A cardiovascular exam revealed S1 and S2 without rubs, murmurs or gallops. Id.  Plaintiff had "benign," +2 leg edema with no weakness or sensory changes. Id.  Plaintiff refused a full hepatitis B panel and a flu shot, as well as referral to a smoking cessation clinic. AR. 91.  Plaintiff's treating physician diagnosed  hypertension, back pain, obesity, and counseled plaintiff to exercise and lose weight. AR. 90-91.

On February 13, 2003, Plaintiff was hospitalized following a myocardial infarction. AR. 102-105. He was discharged on February 18, 2003. Id.  At the time of discharge, other diagnoses included chronic obstructive pulmonary disease, cor pulmonale, cellulites of the lower extremity, obstructive sleep apnea, and respiratory insufficiency. AR. 102.

### 3.    State Agency

In August 2003, a State agency physician reviewed the medical evidence in the records at that time and concluded that there was insufficient medical evidence prior to December 31, 2000, the date plaintiff's disability insurance expired, for a finding of disability under Title II of the Social Security Act. AR. 125.

## II.    DISCUSSION

### A.    Standard of Review

On review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming,

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder." Williams v. Sullivan, 970 F.3d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

**B.     Standard for Entitlement of Benefits**

Disability insurance benefits may not be paid under the Social Security Act ("Act") unless a plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  A plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also Plummer, 186 F.3d at 427.  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated regulations setting forth a five-step evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987); Plummer, 186 F.3d at 428.  In step one, the Commissioner must first determine whether the claimant has shown that she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a).  If a claimant is found to be engaged in substantial gainful activity, the claim will be denied. Bowen, 482 U.S. at 140.

If the claimant is not performing substantial gainful work, the Commissioner proceeds to step two to determine whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); see also Bowen, 482 U.S. at 140-41.  If a claimant fails to show that the impairments are severe, he or she is ineligible for disability benefits. Bowen, 482 U.S. at 141; Plummer, 186 F.3d at 428.

In step three, if the claimant is not performing substantial gainful work and has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or medically equals a listed impairment contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings of Impairments"), the claimant has satisfied his burden of proof, is presumed disabled, and is entitled to benefits. See 20 C.F.R. § 404.1520(d); Bowen, 482, U.S. at 141.

If the Commissioner determines that the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied and the ALJ must consider at step four whether the claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(d); Bowen, 482 U.S. at 141; Plummer, 186 F.3d at 428.  If the claimant is able to perform his or her previous work, the claimant is determined not to be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428.

Finally, if the Commissioner determines that the claimant is no longer able to perform his previous work, the burden of production shifts to the Commissioner, at step five, to show that the claimant is capable of performing other work available in the national economy. 20 C.F.R. § 404.1520(f); Plummer, 186 F.3d at 428.  The Commissioner must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with the claimant's medical impairments, age, education, past work experience, and residual functional capacity. Id.  The Commissioner must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and is not disabled. Id.

**C.     Decision and Findings of the Administrative Law Judge**

Here, the ALJ determined that plaintiff did not establish step two, that he had a "severe

15

impairment" or "combination of impairments" that significantly limited his physical or mental ability to do basic work activities.  After consideration of the entire record, the ALJ made the following findings:

1.  The claimant meets the nondisability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2000.

2.  The claimant has not engaged in substantial gainful activity since January 1, 1996, the alleged date of disability onset.

3.  The claimant did not have any impairment or combination of impairments on or before December 31, 2000, the date he was last insured for Disability Insurance Benefits, which significantly limited his ability to perform basic work-related functions; therefore, the claimant did not have a severe impairment prior to the date he was last insured for Disability Benefits.

4.  The undersigned finds that the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The claimant was not under a disability, as defined in the Social Security Act, on or before December 31, 2000, the date he was last insured for Disability Insurance Benefits (20 CFR § 404.1520).

AR. 15-16.

The ALJ's decision became the final decision of the Commissioner on January 28, 2005. AR. 4.

## D.   Plaintiff's Claims on Appeal

In this appeal, Plaintiff disputes the findings of the ALJ.  Specifically, Plaintiff's argues that: (i) the ALJ erred in finding that Plaintiff did not suffer from a "severe impairment," prior to December 31, 2000, the date Plaintiff was last insured for disability benefits, and (ii) the ALJ erred by failing to seek assistance from a medical advisor to determine the onset date of Plaintiff's disability, as required by Social Security Ruling 83-20.[3] Plaintiff's Brief ("Pl. Br.") at 10-14.

_____

[3] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." Sullivan v. Zebley, 493 U.S. 521, 531 n. 9 (1990).  Such rulings "do not have the force and effect of the law or regulations but

<u>        </u>
**1.      Whether the ALJ erred in determining Plaintiff did not suffer from a**
**              "severe" impairment.**

Plaintiff alleges that he suffered from a combination of severe impairments which rendered him

disabled under the Act prior to December 31, 2000. Pl. Br. at 11.  He asserts that the objective medical

evidence demonstrates that, as early as September 7, 2000, but no later than December 31, 2000, he was

severely impaired by congestive heart failure, chronic obstructive pulmonary disease, high blood pressure,

low back pain, and cellulitis. <u>Id.</u>  Plaintiff asserts that the ALJ failed to correctly apply the Third Circuit's

holding in <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004), regarding how to properly

evaluate the severity of an alleged impairment at step two of the five-step sequential evaluation process

for determining whether a person is disabled. Pl. Br. at 11.

Under the Act, the question of whether an alleged impairment is severe is governed by 20 C.F.R.

§§ 416.920(c), the so-called "severity regulation." <u>See</u> <u>Bowen</u>, 482 U.S. at 140-41.  The severity regulation

provides:

> "If you do not have any impairment or combination of impairments which significantly limits your
> physical or mental ability to do basic work activities, we will find that you do not have a severe
> impairment and are, therefore, not disabled. We will not consider your age, education, and work
> experience."

20 C.F.R. § 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."

§§ 404.1521(b), 416.921(b).  Such abilities and aptitudes include "[p]hysical functions such as walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing,

---

are to be relied upon as precedents in determining other cases where the facts are basically the same."
<u>Allen v. Barnhart</u>, 417 F.3d 396, 402 (3d Cir. 2005) (quoting <u>Heckler v. Edwards</u>, 465 U.S. 870, 874 n.3
(1984)). "A ruling may be superseded, modified, or revoked by later legislation, regulations, court
decisions or rulings." <u>Id.</u>

and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." Id.  If a claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c); see also Bowen, 482 U.S. at 140-41.

In McCrea, the Third Circuit considered exactly what a claimant must show to survive an ALJ's evaluation of whether an alleged impairment is severe. 370 F.3d at 360.  The court held that the burden on an applicant at step two "is not an exacting one," id., and explained that "[a]lthough the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" Id. (citing Social Security Regulation 85-28, 1985 WL 56856, at *3).  "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." McCrea, 370 F.3d at 360 (quoting  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  The court described the step-two inquiry as "a de minimis screening device to dispose of groundless claims," and held that "[a]ny doubt as to whether this showing has been made" should be resolved in favor of the applicant. McCrea, 370 F.3d at 360 (quoting Newell, 347 F.3d at 546-47).

Although the McCrea court cautioned that "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny,"  it  emphasized that a reviewing court should not apply a more stringent standard of review in such cases. 370 F.3d at 360. Instead, the Third Circuit made clear that "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as

18

a whole." McCrea, 370 F.3d at 360-61.  In sum, the court characterized its discussion of step two as an expression "only of the common-sense position that because step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow." McCrea, 370 F.3d at 361 (citing Social Security Regulation 85-28, 1995 WL 56856, at *4 ("Great care should be exercised in applying the not severe impairment concept.")).

Plaintiff argues that the objective medical evidence he marshaled in support of his application for disability benefits satisfies the de minimis standard described by the Third Circuit in McCrea.  He asserts that his claim is not of the "groundless" variety typically weeded-out at step-two.  Accordingly, he urges this Court to reverse the decision of the ALJ, or, alternatively, to remand the case for further consideration. Pl. Br. at 11.  Plaintiff's argument is without merit.

The ALJ's determination that there was no objective medical evidence that Plaintiff suffered from a severe impairment which significantly limited his ability to perform basic work activities prior to December 31, 2000, is supported by substantial evidence in the record.  Despite Plaintiff's long history of treatment by Dr. Wilczynski, Plaintiff's medical records are devoid of any clinical findings evidencing that his alleged impairments amounted to anything other than slight abnormalities.[4]  From 1995 through 2000, Plaintiff saw Dr. Wilczynski approximately sixteen times. AR 117-123.  Dr. Wilczynski's examination notes from that period, and beyond, are brief, largely illegible, and generally include little more than a record of Plaintiff's blood pressure, weight, and results of basic heart and lung examinations. AR. 107-123. Among the legible and substantive information contained in Dr. Wilczynski's examination notes are the results of his repeated basic examinations of Plaintiff's heart and lungs. AR. 107-123.  Consistently, Dr.

---

[4] The record demonstrates that Plaintiff's treatment with Dr. Wilczynski began in 1995 and continued through 2004. AR. 107-123; 128-133.  However, Plaintiff did not seek treatment from Dr. Wilczynski between November 10, 1995 and March 9, 1999. AR. 121, 158.

Wilczynski found that Plaintiff's heart rate and rhythm were regular and that his lungs were either clear, or occasionally contained wheezing or rhonchi. Id.  During Plaintiff's many visits, and despite his complaints, Dr. Wilczynski never performed more in-depth diagnostic tests on Plaintiff's heart and lungs. Indeed, the record lacks evidence of results from chest x-rays, pulmonary function tests, electrocardiograms, echocardiograms, or stress tests.

Additionally, at nearly all of Plaintiff's visits, Dr. Wilczynski diagnosed degenerative joint disease and arthritis. AR. 107-123.  However, Dr. Wilczynski's examinations routinely failed to include motor, strength, range of motion, sensory, or neurological findings. Id.  Further, Dr. Wilczynski's notes do not indicate that he ever performed any laboratory tests to confirm his diagnosis of arthritis. Id.  Dr. Wilczynski also consistently diagnosed lumbosacral strain, yet included no clinical findings pertaining to Plaintiff's back. Id. The only diagnostic test of any kind throughout Dr. Wilczynski's treatment included a June 2001 MRI of plaintiff's lumbar spine that showed only "mild" developmental spinal stenosis and was otherwise normal. AR. 114.  It is also worth noting that Plaintiff frequently presented to Dr. Wilczynski for the sole purpose of refilling his drug prescriptions without undergoing an examination.  AR. 108-112, 116-120. Finally, although Dr. Wilczynski first noted leg edema and coronary artery disease on December 19, 2000, just twelve days before the expiration of Plaintiff's disability insurance coverage, the record contains no evidence that he scheduled clinical diagnostic tests to confirm those diagnoses. AR. 48, 60, 117.

Similarly, there is no evidence in the clinical notes made by Plaintiff's treating physician at the VA Hospital which indicate that Plaintiff's alleged impairments amounted to anything other than slight abnormalities. During Plaintiff's first visit to the VA Hospital on September 7, 2000, he denied any history of coronary disease, myocardial infarction, diabetes, or renal or pulmonary disease. AR. 100-01.  His examination results were unremarkable, except for a blood pressure of 165/94 and edema in his legs. Id.

20

Significantly, there were no positive clinical findings pertaining to Plaintiff's back. Id. Indeed, Plaintiff's treating physician did not examine his back. Id. Nevertheless, Plaintiff's treating physician prescribed Oxycontin, which was later discontinued. AR. 88, 100-01. Id. When Plaintiff returned for follow-up on September 22, 2000, his blood pressure was under "good control" at 149/78, and his extremities were non-tender without edema. AR. 99-100. The remaining examination results were unremarkable. Id. Again, Plaintiff's treating physician did not examine his back, yet he diagnosed chronic low back pain. Id. In October 2000, plaintiff reported no complaints, and described improved low back pain. AR. 99.

Plaintiff returned to the VA Hospital on December 15, 2000, and denied chest pain, dyspnea on exertion, and motor and sensory deficits. AR. 98. During this visit, Plaintiff's treating physician examined Plaintiff's back for the first time, revealing tenderness in the lumbar paravertebral region. Id. However, examination also revealed normal blood pressure of 129/85, and his pulses were intact despite edema to the knees. Id. The physician recommended weight loss and exercise for relief of back pain and amelioration of cardiac risk. AR. 98. Significantly, although this visit took place after September 7, 2000, Plaintiff's amended alleged onset date of disability, the record does not indicate that Plaintiff informed his treating physician that he was unable to exercise due to any functional limitations. Id. A month later, on January 19, 2001, Plaintiff's treating physician recorded that Plaintiff was walking two to three times per week, and had lost fourteen pounds. AR. 92-93. During that visit, Plaintiff also denied experiencing any chest pain or dyspnea on exertion, and reported improvement of his leg edema with use of compression stockings. Id. The results of Plaintiff's November 2001 examination were normal in all respects, except for an elevated blood pressure of 158/85 and "benign" edema in his legs without weakness or sensory changes. AR. 89-91. During that visit, Plaintiff's treating physician again encouraged exercise and weight loss, without comment from Plaintiff. AR. Id.

21

The decision of the ALJ is also supported by the findings of the State agency reviewing medical doctor.  The State agency medical doctor found no evidence that Plaintiff's alleged impairments were severe, and concluded that the record contained insufficient evidence to establish that Plaintiff was disabled prior to December 31, 2000. AR. 125-26.  As set forth in Social Security Ruling 96-6p, State agency medical consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act. See Myers v. Barnhart, 57 Fed. Appx. 990, 995-96 (3d Cir. 2003).  The opinion of a non-examining medical doctor, like the State physician here, may constitute substantial evidence in support of the ALJ's determination, provided other evidence in the record supports it. 20 C.F.R. § 404.1527(f); Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996).

The clinical findings contained in Dr. Wilczynski's examination notes and those of Plaintiff's treating physician at the VA Hospital, along with the conclusions of the State agency physician, provide substantial evidence in support of the ALJ's finding that "the record is devoid of any objective evidence documenting that [Plaintiff's] condition on or before December 31, 2000 resulted in significant functional limitations." AR 14.  As described by the ALJ, the medical evidence in this case demonstrates that Plaintiff received "fairly routine treatment" in the period prior to December 31, 2000. Id.  None of the examination notes in the record include indications that Plaintiff complained of more than slight abnormalities, none of which limited him in any significant manner.

The ALJ also found that while the medical evidence demonstrated Plaintiff suffered from elevated blood pressure, that condition was controlled by daily medication prior to December 31, 2000. AR. 96. According to Dr. Wiczynski's examination notes, during the period between March 9, 1999 and December

31, 2000, Plaintiff's blood pressure was persistently above normal.[5] AR. 117-123.  However, during the same period, Dr. Wiczynski never recorded Plaintiff's blood pressure outside of the "moderate" hypertensive range.[6] Id.  Furthermore, the only evidence in the record related to any functional limitations caused by Plaintiff's elevated blood pressure are Plaintiff's subjective assertions that he grew short of breath after walking or other activity. AR 154-155.

In addition to the medical evidence, Plaintiff's statements to his doctors also support the ALJ's determination.  For example, on June 27, 2000, Plaintiff admitted to Dr. Wilczynski that he had been playing golf, though Plaintiff complained that he was unable to walk all nine holes due to back pain. AR 118.  Also, on July 23, 2001, Plaintiff told Dr. Wilczynski that he had been exercising to reduce his weight. AR. 113.  Further, on at least two occasions, Plaintiff reported to his treating physician at the VA Hospital that he was working the night shift at a motel.[7] AR. 92, 97.  Plaintiff did not include this relevant employment information on the background information questionnaires he completed in support of his claim for disability benefits. AR. 14.  Plaintiff's statements describing his exercise and outdoor activities, and his employment during the period in which he alleges he was severely impaired, contradict his alleged functional limitations and undermine his claim for disability benefits.  Indeed, the ALJ found that Plaintiff's omission of his most recent employment information from his disability benefits claim form rendered his allegations regarding his limitations "not totally credible." AR.16.

---

[5] As the ALJ noted in his written decision, the Merck Manual of Diagnosis and Therapy ("Manual") lists the upper limits of normal blood pressure in adults as 139/89. AR. 14 (citing  The Merck Manual of Diagnosis and Therapy, tbl. 199-2 (Mark H. Beers & Robert Berkow, ed., 17th ed.1999)).

[6] The Manual classifies the range of blood pressures between 140/90 through 179/109 as mild to moderate hypertension. Id.

[7] The VA Hospital records indicate that Plaintiff was employed at the motel from at least December 15, 2000, through January 19, 2001. AR. 92, 97.

This Court defers to an ALJ's determination of credibility since the ALJ had the opportunity to assess the witness's demeanor at the admnistrative hearing. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).  While the ALJ must give serious consideration to a plaintiff's subjective complaints of pain, Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986), he is not obliged to accept without question the credibility of such evidence. Lacorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988) (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).  Moreover, subjective complaints of pain "do not in themselves constitute disability," Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984), and  must be accompanied by medical evidence and laboratory findings that indicate an impairment that could reasonably be expected to produce the alleged symptoms. See 20 C.F.R. §§404.1529(b), 416.929(b); Social Security Ruling 96-7.

As the foregoing discussion demonstrates, this case is factually distinguishable from McCrea, and Plaintiff's reliance on it is misplaced.  In McCrea the Third Circuit found that the plaintiff presented substantial medical evidence in support of her subjective complaints and that the ALJ should have advanced beyond step two of the sequential disability evaluation. 370 F.3d at  361.  For example, the plaintiff produced the results of an MRI test that demonstrated the presence of two herniated discs, accounting for her leg pain. Id.  The plaintiff also produced the results of x-rays of her shoulder and spine that revealed a possible left shoulder separation and mild left torticollis, supporting her claim of shoulder pain and neck pain with frequent headaches. Id.  The nature of the plaintiff's treatment in McCrea also supported the Third Circuit's conclusion that her impairments had more than a minimal impact on her ability to do basic work activities. Id.  The plaintiff received multiple steroid injections to relieve "severe, persistent muscle spasms," and wore a back brace and cervical collar for pain relief. McCrea, 370 F.3d at 361.  Finally, the Third Circuit also relied on statements by the plaintiff's treating physician regarding the limiting nature of her impairments. Id.; 361 ("Because of her back and neck pain, [the plaintiff] is not able

24

to sit for more than two hours a day, and she is not able to carry objects of more than twenty pounds at any time and of objects of ten pounds more than two hours a day.")

By contrast, as the ALJ noted in his written decision, the record in this case contains very little meaningful medical evidence to corroborate Plaintiff's subjective complaints. The nature of Plaintiff's treatment was conservative and not indicative of severe impairments, and none of Plaintiff's treating physicians offered findings indicating that his alleged impairments were anything more than slight abnormalities. For example, despite Plaintiff's regular complaints of back pain, beginning in 1995, an MRI of his lumbar spine was not performed until June 2001. AR. 114. The results showed only "mild" spinal stenosis. Id. Also, despite Plaintiff's history of complaints, his doctors did not detect tenderness in his back for the first time until December 15, 2000. AR. 98. None of Plaintiff's doctors opined that Plaintiff's back tenderness or mild stenosis was responsible for the functional limitations he alleged, and Plaintiff's pain was treated with drugs and instructions to control his weight through exercise. AR. 98. Similarly, with regard to Plaintiff's alleged congestive heart failure, chronic obstructive pulmonary disease, and hypertension, none of Plaintiff's physicians ever ordered a chest x-ray, pulmonary function test, or cardiac studies during the relevant period, despite Plaintiff's reports that he smoked approximately two packs of cigarettes per day and experienced occasional shortness of breath. Instead, Plaintiff's doctors treated his moderate hypertension with drugs, and never opined that his cardiovascular condition had any more than a minimal effect on Plaintiff's ability to work.

As set forth above, the claimant bears the burden of proving disability. 42 U.S.C. § 423(d)(5). In the absence of objective medical evidence, a claimant cannot sustain his burden of proof solely through conclusory and self-serving testimony that he was disabled at the crucial time. See Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990). Here, unlike in McCrea, the record lacks sufficient objective medical

evidence to support Plaintiff's claim for disability benefits.  Consequently, Plaintiff relies primarily on his own subjective complaints and allegations of functional limitation to support his argument that his impairments were more than slight abnormalities at the time his disability insurance expired on December 31, 2000.  However, the ALJ specifically found Plaintiff less than fully credible.  The objective medical evidence in the record substantially supports the ALJ's finding that Plaintiff did not suffer from a severe impairment prior to December 31, 2000, the date his disability insurance coverage expired.[8]

### 2.     Whether the ALJ should have sought the assistance of a medical expert to determine the onset date of Plaintiff's disability.

Plaintiff next argues that the ALJ erred by failing to secure the services of a medical expert to assist him in determining the onset date of Plaintiff's disability. P. Br. at 13.  As discussed above, Plaintiff's disability insurance coverage expired on December 31, 2000.  The ALJ found that the record did not support the conclusion that Plaintiff was disabled prior to that date for the purpose of receiving Title II disability benefits.  On February 13, 2003, Plaintiff suffered a myocardial infarction and was hospitalized for five days. AR. 102-105.  The Social Security Administration has since deemed Plaintiff disabled for the purpose of receiving Title XVI SSI benefits.  Plaintiff asserts that the actual onset date of his disability is unclear, and must be inferred from the record.  Accordingly, he argues that Social Security Rule 83-20 required the ALJ to seek the assistance of a medical expert to help determine the onset date of his disability.

Social Security Rule 83-20 ("SSR 83-20")  provides in relevant part:

---

[8] Although Plaintiff's impairments ultimately reached disabling severity after his insured status expired, it is well established that evidence of an impairment that reached disabling severity after the expiration of an individual's insured status cannot, alone, be the basis for entitlement to a period of disability insurance benefits, even though the impairment may have existed before the individual's insured status expired. <u>Kane v. Heckler</u>, 276 F.2d 1130, 1131, n.1 (3d Cir. 1985); <u>De Nafo v. Finch</u>, 436 F.2d 737, 739 (3d Cir.1971); 20 C.F.R. § 404.320(b)(2) .

With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

In Walton v. Halter, the Third Circuit interpreted SSR 83-20 as requiring an ALJ to call upon the services of a medical advisor when the alleged "impairment was a slowly progressive one, the alleged onset date was far in the past, and adequate medical records for the most relevant period were not available." 243 F.3d 703, 709 (3d Cir. 2001); see also Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 549 (3d Cir. 2003).

The Commissioner disputes the applicability of SSR 83-20 in this case.  She argues that the facts of this case do not implicate SSR 83-20 because there is no evidence in the record to support that Plaintiff's disability was the result of a slowly progressive impairment, Plaintiff's alleged disability onset date was not far in the past and adequate medical evidence for the entire relevant period is available in the record. Defendant's Brief ("Defendant. Br.") at 22-25.  The Commissioner is correct, and the ALJ was not required, under these facts, to have sought the assistance of a medical expert.

In Walton, the plaintiff was a forty-eight year old adult who, in 1992, filed an application for child's disability benefits based on his deceased father's employment record. 243 F.3d at 705.  The plaintiff asserted a disability onset date of June 13, 1966, the day before his twenty-second birthday.[9] Id.  At the time he filed his application, the plaintiff had been deemed disabled by his bi-polar disorder and manic depression for the purpose of receiving SSI payments. Id.  The plaintiff's long history of mental illness included several suicide attempts, multiple hospitalizations and psychiatric treatment throughout his life. Id.  Concluding his illness was progressive, and that the onset date of his disability

_____

[9] To qualify for child's disability benefits, the plaintiff had to show that he was disabled prior to his twenty-second birthday. Walton, 243 F.3d at 705 (citing 20 C.F.R. § 404.350).

likely predated his first formal diagnosis in 1971, the plaintiff filed an application for disability benefits and produced medical evidence in support. Id.  The Commissioner ultimately denied the plaintiff's application. Id.  On appeal, the Third Circuit reversed and remanded the case. Id. At 710.  The court held that SSR 83-20 required the ALJ to call upon the services of a medical advisor rather than rely on his own lay analysis of the evidence. Id. at 709.

This case is factually distinct from Walton in several respects.  First, unlike in Walton, there is no evidence that Plaintiff's illness was progressive.  Plaintiff does not assert that he was ever previously hospitalized for any cardiovascular distress prior to his original alleged onset date of disability or the amended date.  Nor does Plaintiff allege that he suffered any cardiovascular distress requiring medical attention prior to his first visit to Dr. Wiczynski's office on April 26, 1995.  Indeed, the record demonstrates that, during the period between 1995 and 2001, Plaintiff's moderate hypertension remained stable and did not progress.  After four visits to Dr. Wiczynski in 1995, Plaintiff did not return for treatment until March 9, 1999, approximately three and one half years later.  At that time, rather than presenting with higher blood pressure than he had in the past, Plaintiff's blood pressure was well within the moderate range, where it remained through 2002, with only slight fluctuation. AR. 107-123.

Second, in this case, the distance in time between either of Plaintiff's alleged disability onset dates and his eventual disability is dwarfed by the twenty-six-year period in Walton. Plaintiff initially alleged a disability onset date of January 1, 1996, AR. 42, but later amended that date to September 7, 2000. AR 140.  Measured against the distance in time in Walton, neither of Plaintiff's alleged onset disability dates can be fairly described as "far in the past" from Plaintiff's 2003 disability.  Using Plaintiff's amended date, the time difference is a matter of little more than two and one half years.

28

That window of time was wide enough to allow Plaintiff to amass a thorough and developed record related to his cardiovascular and other impairments, but narrow enough to avoid the challenge in Walton, where contemporaneous medical records were difficult, if not impossible, to obtain.

Third, in contrast to Walton, here, adequate medical evidence from the relevant period preceding Plaintiff's 2003 disability was available to the ALJ.  Plaintiff's medical evidence was more than sufficient to allow the ALJ to make an informed evaluation of Plaintiff's disability status prior to his alleged disability onset date.  To be sure, there is little medical evidence associated with the period surrounding Plaintiff's originally alleged disability onset date of January 1, 1996.  That date fell within the period during which Plaintiff was not actively seeking treatment for his alleged impairments and, consequently, for which there is no medical evidence.  However, there is more than sufficient medical evidence associated with Plaintiff's amended disability onset date of September 7, 2000, a date which Plaintiff elected and which is controlling.  Plaintiff visited Dr. Wiczynski approximately twelve times from Mach 9, 1999, through December 19, 2000, his last visit prior to the expiration of his disability insurance. AR. 109-121.  During each of those visits, Dr. Wiczynski recorded Plaintiff's blood pressure and examined his heart and lungs. Id.  During the same period, Plaintiff visited the VA Hospital four times, where, among other things, his blood pressure was measured and his heart and lungs examined. AR. 96-101.  There is no question that the ALJ based his decision on the medical evidence in the record, rather than his own lay opinion.

None of the three preconditions described by the Third Circuit in Walton, which trigger the application of SSR 83-20, are present in this case.  Accordingly, it was not error for the ALJ to have evaluated Plaintiff's claim without the assistance of a medical expert to determine Plaintiff's disability onset date.

## III.   CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence in the record.  Accordingly, the decision is affirmed and Plaintiff's Complaint is dismissed in its entirety.

An appropriate Order shall follow.

/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: March 20, 2006

30